# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

CHRISTI E. YOUNG,      )
                                )
      Plaintiff,      )
                                )
v.                         )    Case No.  CV410-155
                                )
MICHAEL J. ASTRUE,      )
*Commissioner, Social Security*      )
*Administration,*      )
                                )
      Defendant.      )

# REPORT AND RECOMMENDATION

Christi E. Young appeals the Social Security Administration's (SSA's) denial of her application for disability insurance and supplemental security income (DIB and SSI) benefits. Doc. 1. She insists that the SSA Commissioner failed to properly consider and weigh her medical evidence. Doc. 11. The decision should be affirmed.

## I.  GOVERNING STANDARDS

The nearly four-inch thick record here spans 2005 - 2008. R. 13-23.[1]  It is thus worth pausing to note preliminarily that not every last

---

[1]  The proceedings before the SSA are set forth in a "transcript" in the record at doc. 10.  For convenience, the Court will reference the paper copy and thus its printed pagination, which does not align with the court's "electro-print" pagination when

ache and pain is relevant, as disability is the "*inability* to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

Hence, the SSA and courts consider only those impairments which, singularly or in combination, demonstrate § 423(d)(1)(A)-level inability. And the burden of proving disability lies with the claimant, 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To that end, this Court's review is limited to determining

> whether the [SSA's] decision is "'supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

*Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). *Winschel* also explained that

---

viewed through doc. 7 online. Thus, the Court will refer to the printed version as "R. __." "R. 13," then, means printed page 13 of the hard-copy volume stored in the clerk's office; that same page is found on the Court's online docket at doc. 7 at 13.

> [t]he Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. *See Phillips*, 357 F.3d at 1237–39; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

*Id.* "The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." *Boykin v. Commissioner of Social Sec.*, 2011 WL 2669643 at *12 (M.D. Fla. Jul. 7, 2011). The claimant must prove the first four steps, and the burden switches to the SSA to prove the fifth. *Frazier v. Astrue*, 2011 WL 2144619 at * 1 (S.D. Ga. May 31, 2011).

Within those steps rules are applied for things like pain claims and whether a treating physician's opinion should be accorded more weight than a non-treating, "consulting" physician's. Where the claimant

> attempts to establish disability through her own testimony concerning pain or other subjective symptoms, [she] must satisfy two parts of a three-part "pain standard," which requires evidence of an underlying medical condition, and either (A) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or

> (B) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "After considering a claimant's complaints of pain, the [SSA's Administrative Law Judge (ALJ)] may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

*Smith v. Comm'r of Soc. Sec.*, 2011 WL 1363987 at * 2 (11th Cir. Apr. 11, 2011).   Meanwhile, examining and treating physicians's opinions generally

> are given more weight than non-examining or non-treating physicians unless "good cause" is shown. *See* 20 C.F.R. § 404.1527(d)(1), (2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). Good cause exists to discredit a physician's testimony when a physician's opinion is conclusory, contrary to or unsupported by the evidence of record, or inconsistent with the physician's own medical records. *Lewis*, 125 F.3d at 1440. "[F]indings and other opinions of State agency medical and psychological consultants ... [are considered] as opinion evidence ..." of non-examining sources. 20 C.F.R. § 404.1527(f)(2)(i).

*Id.*   So "[a]bsent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." *Winschel*, 631 F.3d at 1179 (quotes and cites omitted).   And "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.*; *Mize ex rel. D.I.M. v. Commissioner of Social Sec.*, 2011 WL 2176155 at * 1 (11th Cir. Jun. 3, 2011).

However, "an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion. *See Phillips*, 357 F.3d at 1241." *Jarrett v. Commissioner of Social Sec.*, 2011 WL 1378108 at * 3 (11th Cir. Apr. 11, 2011). And "where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Id.*[2]

## II. BACKGROUND

Young, a former kitchen worker, grocery store cashier, and fast-food restaurant employee, R. 826-29, 847-48, filed her DIB and SSI

---

[2]  *Compare Winchel*, 631 F.3d at 1178-79 (remanding SSI/DIB case because the ALJ failed to "explicitly consider and explain the weight accorded to the medical opinion evidence."), *with Carter v. Comm'r of Social Sec.*, 411 F. App'x 295, 298-99 (11th Cir. 2011) (substantial evidence supported decision by ALJ to accord little weight to conclusory statement by claimant's treating physician that he was unable to work, where statement rested upon subjective complaints by claimant that the ALJ had found not to be credible and was inconsistent with physician's own medical records); *Gray v. Comm'r of Social Sec.*, 2011 WL 1810524 at * 2 (May 11, 2011) (substantial evidence in the record supported ALJ's findings that social security disability claimant's hypertension, anxiety, and depression were not severe impairments; ALJ properly gave little weight to opinion of physician who did not treat or examine claimant and whose report, while mentioning her hypertension, did not suggest it was serious enough to impair her ability to work, and although claimant's medical evidence reflected history of anxiety and depression, record as whole did not reveal long-term functional limitations stemming from those impairments); *Hurtado v. Comm'r of Soc.Sec.*, 2011 WL 1560654 at * 2 (11th Cir. Apr. 25, 2011) (claimant who suffered from bipolar disorder, major depressive disorder, obsessive compulsive disorder, and osteoarthritis of the hips and lumbar spine was not disabled, even though she could not perform her past relevant work as an elementary school teacher, since she was capable of performing simple routine work in positions which were available in significant numbers in the national and local economies, including fast food worker and mail clerk).

applications in 2005.  R. 13.  Many of her health problems stem from her obesity, which she herself emphasizes is "extreme."  Doc. 11 at 9 ("She is 61" tall, and weighed . . .  as much as 333 [pounds] as of 12/07 (R. 777).").  The ALJ found that she "has the following severe combination of impairments major depressive disorder, post-traumatic stress disorder, history of congested heart failure with history of dilated cardiomyopathy, asthma, facet arthritis at L3-4, L4-5, L5-S1, moderate; morbid obesity; and speech dysfluency (20 CFR 404.1520(c) and 416 920(c))."  R. 15.

That description caps off a history, starting in 2005, of "low back pain after reportedly being involved in a motor vehicle accident.  The diagnosis was right lower back pain with sciatica. . . ." *Id.*  But a 2005 MRI showed this as only a moderate, treatable ailment. *Id.*  In fact, by November of 2005, x-rays of the lumbar spine were "essentially normal." R. 16.  Still, Young's medical problems were mounting, as she by then had "a history of cardiomyopathy and congestive heart failure and morbid obesity."  R. 16. The ALJ thus considered 2005-recorded problems like "right-sided chest wall pain and shortness of breath for over a week," R. 16 (she had failed to take her medications, though) and moderate sleep apnea, plus congestive heart failure.  R. 16.

He next noted that in 2006 she was seen for a possible stroke. R. 16. She had a history of asthma and suffered from "stuttering/dysfluency." R. 16. She also showed "a history of diabetes mellitus, as well as hypertension with ischemia secondary to a cerebrovascular accident in March 2006, but there [was] no evidence of any residual effects or end organ damage as a consequence of these problems." R. 18. And, while Young was found to "have 'mild' degenerative spurs at [backbone disk designations] C5-6 and C6-7 as indicated by a[n] MRI in December 2005 . . . there [was] no evidence that it cause[d] more than minimal functional limitations. . . ." R. 18. The ALJ also deemed "non-severe" Young's apnea (controlled by a Continuous Positive Airway Pressure machine), diabetes, hypertension, and degenerative disk disease impairments. R. 18.

Young also claimed to suffer from "anxiety and depressed moods secondary to traumatic related issues," R. 17, which followed "a history of sexual abuse that had been triggered by her daughter's trauma in late 2004." R. 17. Yet, she took no psychotropic medications and did not follow through on a psychiatric intake at a local mental health center. R. 17. Nor had she been diagnosed as psychotic, suicidal, or homicidal. R.

17. Too, she exhibited normal intelligence. R. 17.

While the ALJ noted some mental health deficits, R. 17, and her May 2006 - March 2007 medical records showed a mental impairment, a State agency consultant's (Dr. A. W. Hartzell's) opinion -- adopted by the ALJ -- describes her as suffering from only "a 'mild' restriction of activities of daily living moderate difficulty in maintaining social functioning: 'moderate' deficiency in concentration, persistence or pace; and 'no' repeated episodes of decompensation, each of extended duration. . . ." R. 17. The ALJ cited additional evidence in support of that conclusion:

> Relevant evidence indicates the claimant acknowledged that she was able to care for her children and herself, perform household chores daily/weekly, prepare meals, drive, and grocery shopped twice a month. She played with her children watched television and listened to the radio, read, run[sic] errands for herself and children, and goes to doctor appointments for herself and with her children. She took her children to the movies, out to eat at restaurants, and to the park and swimming. She visited outside of the home monthly and she attended church about eight times a month. [Young also] acknowledged that she was able to handle her own finances. Dr. Hartzell's evaluation shows moderate limitations on concentration persistence and pace and socializing at times per claimant's statements.

R. 17-18 (cites omitted).

Young, the ALJ concluded, is *not* disabled. R. 22. To reach that conclusion he stepped through the above-noted five-step process. R.

18-23. He addressed the above-noted layers of medical and other evidence and explained why he rejected some and accepted others. Evidently mindful of the factual/medical credibility borderline,[3] he factually supported his credibility choices about whether Young is exaggerating her claimed disability:

> The claimant's allegation that she is disabled is inconsistent with her reported activities of daily living. [Young] reported in written documents that that she cared for her children and herself, performed household chores (*i.e.* laundry vacuuming, dusting, mopping, and washing dishes) daily/weekly, prepared meals, drove, and grocery shopped twice a month. She played with her children, watched television and listened to the radio, read, ran errands for herself and children, and went to doctor appointments for herself and with her children. She took her children to the movies out to eat at restaurants and to the park and swimming. She visited outside of the home monthly, and she attended church about eight times a month.

R. 20.

Nevertheless Young, who testified that she can only walk "maybe 10 to 20 feet" and must sit down due to back pain, R. 840, showed enough of an impairment to make it through "step 4," in that the ALJ consulted with a Vocational Expert's (VE) and then agreed with the VE's opinion

---

[3] *See Denson v. Astrue*, 2011 WL 2446327 at * 14 n. 13 (N.D. Fla. May. 11, 2011) (collecting Eleventh Circuit cases reminding that ALJ's can determine "factual" credibility but not make medical judgments such as whether a claimant actually does suffer from a mental deficit); *Boyd v. Astrue*, 2011 WL 1259795 at * 7 (M.D. Fla. Mar. 31, 2011) (ALJ can note claimant's inconsistent statements).

that she could *not* return to her past work.  R. 20-21.  The ALJ therefore focused on "step 5" -- which required him to "determine that significant numbers of jobs exist in the national economy that the claimant can perform."[4] *Winschel*, 631 F.3d at 1180.  "Considering [Young's] age, education, work experience, and [RFC]," the ALJ noted, "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404 1560(c), 404 1566, 416.960(c) and 416 966)."  R. 21.

Those jobs existed within the "unskilled light occupational base," R. 21, but her RFC enabled her to perform only *part* of the work range directed by SSA Medical-Vocational Rule 202.20 -- i.e., her ability to perform in that range "has been impeded by additional limitations." R. 21. So the ALJ again consulted with the VE, who "testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a[n] office helper . . . mail clerk . . . and surveillance system monitor. . . ."  R. 21-22; *see also* R. 851-52.

---

[4]  "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Phillips*, 357 F.3d at 1239–40. 'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.' *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)." *Winchel*, 631 F.3d at 1180.

## III. ANALYSIS

In various forms Young argues that the ALJ failed to properly assess her evidence. She contends that the ALJ (1) failed to consider the combined effect of all of her impairments throughout the five-step process, doc. 11 at 8-10; (2) failed to comply with the mode of analysis required by the SSA's regulations for the evaluation of mental impairments to support his findings, *id.* at 10-12; (3) failed to support his RFC finding with substantial evidence, let alone determine it upon proper legal standards, *id.* at 12-15; (4) improperly weighed medical opinion evidence, *id.* at 15-16; and (5) failed to properly evaluate Young's ability to make a successful adjustment to other work at "Step 5" of the five-step process. *Id.* at 16-19.

To reiterate, the ALJ was required to consider all impairments, both singly and in combination, when analyzing whether Young is disabled. Doc. 11 at 8; *see* 20 C.F.R. § § 404.1523 and 416.923; *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Young contends he did not. His decision's list of impairments is incomplete, she says, because it omits maladies like "chronic back pain, hypertension, left hemiparesis, sleep apnea syndrome, femoral nerve compression. . . ." Doc. 11 at 8.

An ALJ is not required to expressly cite every last ailment, especially where (as here) he expressly determines that the claimant does not have an impairment or combination of impairment that meets SSA listed impairments. *See* R. 18 (noting that she does not). That finding alone can be taken as evidence that the ALJ considered the combined effects of all of her impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (*citing Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that a claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicates proper consideration of impairments in combination)); *Baker v. Astrue*, 2011 WL 611663 at *8 (M.D. Fla. Feb. 11, 2011). Young's first argument thus fails.

She next complains that the decision "failed to evaluate Young's morbid obesity *in all of its* dimensions, not only in contributing to the severity of her orthopedic, cardiac, respiratory and sleep-related breathing disorders, but also in exacerbating the symptoms and limitations caused by them" *Id.* at 9 (emphasis added). Claimant is "not just obese," she reminds, but "'enormously' obese,'" as repeatedly noted by her

physicians. *Id.* And the ALJ's failed to mention or apply SSR 02-1p. [5] *Id.* at 9-10.

Courts routinely grant relief where an ALJ improperly considers physician opinions. *See, e.g.*, *Hoehn v. Commissioner of Social Sec.*, 2011 WL 2470110 at * 6 (M.D. Fla. Jun. 21, 2011) (remand required because, *inter alia*, the ALJ misapplied *Winchel* and "inexplicably" cited a doctor's "report as support for conclusions which are substantially the opposite of [that doctor's] opinion"); *Evans v. Astrue*, 2011 WL 1636920 at * 7 (S.D. Ga. Mar. 29, 2011) (remand warranted because "the ALJ's decision focused on the portions of [a consulting physician's] report that supported [the ALJ's conclusion, while failing to adequately address the parts that did not"). But here there is no indication that the ALJ failed to properly consider Young's medical reports, let alone any of her ailments. In fact,

---

[5] "Social Security Ruling, SSR 02–1p notes, 'Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems.' SSR 02–1p, 67 Fed.Reg. 57859–02 (Sept. 12, 2002). 'It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' *Id.*" *Fashaw v. Astrue*, 2011 WL 1211455 at * 2 n. 1 (M.D. Fla. Mar. 31, 2011). The SSA's bottom line: "[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." 67 FR 57859-02, 2002 WL 31026506; *see also Jones v. Astrue*, 2011 WL 1587731 at * 9 (S.D. Ga. Mar. 29, 2011). Here the ALJ *expressly* considered Young's obesity. R. 15, 16, 20.

and as noted *supra*, the ALJ specifically cited her medical reports (she has visited medical clinics, not individual doctors, R. 789-93). And he considered her "morbid obesity," apnea, heart conditions, etc., R.16, as coupled with her physician's opinion that she might have difficulty concentrating on attention to tasks. R. 17. In fact, he found (at step two) that her obesity was a severe impairment. R. 15. He also noted her "history of cardiomyopathy and congestive heart failure and morbid obesity." R. 16.

But he then noted that, despite that and all of her other problems, she could still "care for her children and herself, perform household chores daily/weekly, prepare meals, drive, and grocery shopped twice a month. . . ." R. 17. He specifically acknowledged her claimed back pain, and her claim that it is "exacerbated by her obesity," R. 20, but he also concluded that "there is no evidence that her obesity has impacted on her heart and lung functioning," *id.*, and that her "allegation that she is disabled is inconsistent with her reported activities of daily living." *Id.*

That evidence alone is enough to support an ALJ's decision to discount a treating physician's opinion on this point. *Jarrett*, 2011 WL 1378108 at * 3; *Mason v. Commissioner of Social Sec.*, 2011 WL 2419929

at * 2 (11th Cir. Jun. 16, 2011) ("a treating physician's opinion is not entitled to considerable weight if it conflicts with the claimant's own testimony regarding her daily activities."); *see also supra* n. 2. The same must be said for discounting claimant's own pain and other claims. *Smith*, 2011 WL 1363987 at * 2; *Mason*, 2011 WL 2419929 at * 4.

On top of that the ALJ gave, as he was authorized to do because it contradicted no treating physician's opinion, *Jarrett*, 2011 WL 1378108 at * 3, "great weight to the State Agency consultant's physical assessment dated February 27, 2007." R. 20 (cite omitted).[6] That opinion was "fully justified and consistent with other substantial objective medical evidence in the case record." R. 20. And that, in turn, is all this Court needs (i.e., "substantial evidence") to sustain his decision.[7]

---

[6] Young failed to cite to any treating physician's opinion that she was disabled within the meaning of the above-detailed, § 423(d)(1)(A) standard.

[7] It is of no moment that the ALJ failed to mention SSR 02-1p, *see supra* n. 5, as the record shows that he complied with it by expressly noting her obesity and considering it with her other limitations, including what she could still do function-wise (i.e., shop, play with her kids, etc.) despite her obesity. The problem with Young's argument is that it is simply not enough to note how obesity *can* impair functioning; she must also show that she *is* impaired by it. Doc. 11 at 9-10. Put another way, "neither specific weights nor descriptive terms for obesity, including "morbid," establish whether obesity is severe. SSR 02–1p." *Moore v. Astrue*, 2011 WL 2562838 at * 2 (M.D. Fla. Jun. 10, 2011). Rather, she must cite "persuasive evidence indicating that she was functionally limited by obesity." *Beasterfeld v. Astrue*, 2011 WL 2632075 at * 3 (M.D. Fla. Jun. 2, 2011) (footnote omitted). The ALJ here cited substantial enough evidence to support his conclusion that she is not.

Young next complains that the ALJ failed to comply with the "mode of analysis" required by the SSA's "regulations for evaluating mental impairments and to support such findings as he made by substantial evidence." Doc. 11 at 10. That involves multiple layers of analysis:

> In evaluating a claimant's mental condition, the Regulations direct the use of the psychiatric review technique. *See* 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied by the psychiatric review technique form ("PRTF") and is further described in the preface of section 12.00 of the listing of impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listings. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. Next, the degree of functional limitation relating to such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c).

*Willimon v. Astrue*, 2010 WL 1252152 at * 7 (M.D. Fla. Mar. 26, 2010).

Here the ALJ found that Young *has* a mental impairment. R. 17. He thus had to determine the degree of that impairment, and the same regulations guide him in that process:

> In determining the degree of functional limitation resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the listings are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The first three broad functional areas are rated using

a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the criteria under paragraph B do not establish that the claimant is disabled, depending on the type of mental disorder, the criteria under "paragraph C" are considered. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12 .00.

*Willimon*, 2010 WL 1252152 at * 7.

For affective disorders like depression, the ALJ applies the "paragraph C criteria," which includes a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, [etc.]." 20 C.F.R. Part 404, Subpart P, App. 1 § 12.04(C); *Willimon*, 2010 WL 1252152 at * 7 n. 5.

The ALJ concluded that Young's mental impairments did "not result in the degree of functional limitation required to satisfy the 'B' or 'C' criteria," R. 17, as she at most suffered a "'mild' restriction of activities of daily living; 'moderate' difficulty in maintaining social functioning; 'moderate' deficiency in concentration, persistence or pace; and 'no' repeated episodes of decompensation, each of extended duration. . . ." R. 17. To reach that result he considered a 2005 mental health report which concluded that Young suffers no disability-level (but rather,

only vocation-limiting) mental impairments. *See* R. 619 (2005 report of SSA consulting physician Hartzell, opining that she "would be able to adhere to a work schedule and to meet production norms on simple tasks in a non-stressful job situation, based on her current mental status and abilities."); *see also* R. 624 (2000 report of A. M. Christie, J.D., Psy. D, opining that her "current intellectual and emotional functioning are unlikely to keep her from being able to gain and maintain employment.").

The ALJ also considered March 2006 through March 2007 medical records "with a diagnosis of major depressive disorder with psychotic features." R. 17 (cite omitted). He specifically credited Young's medical evidence by finding that she "has the following severe combination of impairments: major depressive disorder; post-traumatic stress disorder; history of congestive heart failure with history of dilated cardiomyopathy; asthma, facet arthritis. . . ." R. 15. But again, he also found that her mental impairments resulted in only a mild restriction of activities of daily living moderate difficulty in maintaining social functioning moderate deficiency in concentration persistence or pace and no repeated episodes of decompensation each of extended duration. R. 17.

To support this conclusion the ALJ cited, as noted above, Young's

ability to function in many ordinary activities like prepare meals, grocery shop, play with her children, run errands, etc. R. 17. Young's "mode of analysis" argument fails, as she has failed to show that the ALJ materially violated that mode. Instead, she is simply unhappy with the way the ALJ weighed the record evidence. This Court, of course, cannot reweigh the evidence, but merely determine whether substantial evidence supports the ALJ's determination.

For that matter, Young has not shown how the ALJ improperly considered or weighed a physician's opinion, such as by wrongfully cherry-picking or misunderstanding portions of them. To the contrary, and as the SSA properly points out, doc. 12 at 9-10, the ALJ cited to valid record evidence to support his "B" and "C" determinations under the above criteria. Under *Winchel's* substantial evidence standards set forth *supra*, that's enough.

In her next argument Young complains that the ALJ failed to support his RFC finding with substantial evidence, let alone determine it upon improper legal standards. Doc. 11 at 12-15. For example, the ALJ "failed to provide a statement of her exertional RFC on a

'function-by-function' basis as required by SSR 96-8p."[8]   Doc. 11 at 13.

In fact the ALJ *complied* with SSR 96–8p by determining that Young

could perform light work -- that she could lift and carry twenty pounds

occasionally and ten pounds frequently, stand and walk for six hours in an

eight-hour day, and sit for the remaining time in an eight-hour day.[9] R.

18. He also considered her additional nonexertional restrictions[10] by

---

[8]   Social Security Ruling 96–8p provides that

"[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.... Only after that may RFC be expressed in terms of the exertional levels of work...." The function-by-function assessment evaluates the claimant's "remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling." SSR 96–8p. The ruling states that the ALJ must consider each strength demand separately and provides an example: "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." SSR 96–8p.

*Mohammed v. Astrue*, 2011 WL 2621362 at * 9 (N.D. Ga. Jul. 1, 2011).

[9]   He did not expressly say all that but "[l]ight work requires the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday. 20 C.F.R. § 404.1567(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982)." *Bolton v. Astrue*, 2011 WL 1060666 at * 6 n. 8 (M.D. Fla. Mar. 22, 2011). So, to conclude that one can perform light work is to in effect say that.

[10]   Nonexertional impairments include pain, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995), and other "medically determinable impairments, such as skin impairments, epilepsy, and impairments of vision, hearing or other senses, postural and manipulative limitations, and environmental restrictions [that] do not limit physical exertion." 20 C.F.R. § 404.1545(d). "Unlike exertional limitations, nonexertional limitations are present at all times in a claimant's life, whether during exertion or rest." *Jerome v. Astrue*, 2009 WL 3757012 at * 11 (D.Vt. Nov. 6, 2009) (quotes and cite omitted).

limiting her to occasional climbing.  R. 18.  And, he adopted a state agency physician's function-by-function assessment of her functional capacity, R. 18; R. 658-659; *Onishea v. Barnhart*, 116 F. App'x 1, 1 (5th Cir. 2004) (it was proper for ALJ to in part base his assessment on state examiner's function-by-function analysis) -- a finding Young does not rebut.  Under the substantial evidence standard, that's enough.[11]

Young next insists that the ALJ failed to properly credit her disfluency problem, doc. 11 at 13-14, but in fact the record shows that it

---

[11]   It is important to remember that

"the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir.2009); *see also* Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *2 (July 2, 1996) ("The ... [claimant's] RFC is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering ... her age, education, and work experience.").

*Qualls v. Astrue*, 2011 WL 2600546 at * 2 (10th Cir. Jul. 1. 2011).  Here the ALJ determined Young's RFC by reviewing her medical evidence, non-medical evidence and personal testimony then cited her ability to engage in a fairly wide range of daily activities at home.  This he was fully authorized to do:

Factors the ALJ may consider in assessing a claimant's complaints include "the levels of [her] medication and [its] effectiveness, ... the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

*Id.*  So long as the ALJ articulated, "at some minimum level," his analysis of the evidence, SSR 96–8p was satisfied.  *Eakin v. Astrue*, 2011 WL 2580355 at * 3 (7th Cir. Apr. 27, 2011).

has not been supported by consistent medical evidence. *See, e.g.*, R. 190-91 (Young's own medical record with Charles Hope, M.D., noting in 2005 that she "answers questions appropriately"); R. 195 (same). In fact, her speech at times has been normal. R. 479 ("conversational speech"); R. 534 ("She has normal fluent speech"); R. 617 ("Her speech is appropriate"); R. 791 ("normal"); R. 796 ("normal"); R. 800 ("normal"). Plus her neurological examination revealed no deficits. R. 204, 225, 611. Also, a state agency physician noted no communication limitation. R. 635.

In any event the VE accommodated that deficiency when opining that jobs nevertheless existed for her. R. 851-852. And the Court has already addressed her "credibility" arguments *supra* (*i.e.*, the ALJ was well within his authority to make factual, as opposed to medical, credibility choices in arriving at his determination of her RFC). Also, the ALJ was free to rely upon a nonexamining physician's report because it does not contradict a treating physician's report. *Edwards v. Sullivan*, 937 F.d 580, 584-85 (11th Cir. 1991).[12]

---

[12] Young cites to a hospital clinic's "treating physician" report, R. 208 (Dr. Okere, who in 2005 wrote "unable to work for at least six months" amidst two pages of intermittently legible findings). Doc. 11 at 26. The standard, however, is twelve months, 42 U.S.C. § 423(d)(1)(A), and again, other record evidence supports the ALJ's

Young next argues that the ALJ improperly weighed the medical evidence in accordance with SSA regulations and rulings. Doc. 11 at 15. As detailed above, however, the ALJ comprehensively weighed the medical evidence, and the Court has been shown no authority for disturbing an ALJ's determination merely because specific SSA regulations and rulings are not explicitly mentioned. Meanwhile, the record easily supports the conclusion that Young failed to present medical evidence contradicting the state's examining consultants here. Nor does she cite any other flaws in the ALJ's evaluation. This argument also fails.

Finally, Young insists that the ALJ's step-five determination was flawed because he failed to "ask the VE to assess the effect of the non-exertional limitations he found on the range of unskilled sedentary and light exertion occupations in the national economy." *Id.* at 18. The VE, she says, could "name only two light exertion skilled occupations out of 1400 . . . and only one sedentary exertion unskilled occupation out of the 200 such occupations administratively noticed by the [SSA] in the [SSA] Guidelines at Sections 201.00(a) and 20200(a)." *Id.* Even at that, the VE "thought he should remove the sedentary occupation when asked a second hypothetical supposing her inability to speak often or at length."

contrary conclusion.

*Id.*

Also, she continues, the ALJ's "decision made no finding about the extent of the erosion of the light or the sedentary occupational bases," but instead concluded that based on the VE's testimony, she could perform other work that exists in significant numbers in the national economy, and thus she is not disabled. *Id.* Yet, she concludes, the VE's testimony actually *supports* a disability finding because the VE said there were only two unskilled occupations that a hypothetical person in claimant's position could perform. "In other words," she explains, the non-exertional limitations supposed by the ALJ eliminated over 99% of the two occupational bases. It follows that these limitations severely eroded her remaining occupational base of unskilled light exertion work, and severely or completely eroded her base of unskilled sedentary exertion work," thus justifying a disability finding. *Id.* at 18-19.

These arguments fail. The ALJ in fact did make an "erosion" finding[13] and incorporated it in his hypothetical question to the VE -- that Young could only occasionally climb, had to avoid concentrated exposure

---

[13] Questions like how much Young's ability to perform a range of work has been "eroded" are reserved to the ALJ, not the VE. It was not the VE's task to assess Young's RFC, since that is reserved to the ALJ. *Smith v. Astrue*, 2011 WL 2650588 at * 5 (M.D. Ala. Jul. 6, 2011); *Allen v. Astrue*, 2010 WL 1658811 at * 6 (S.D. Ala, Apr. 21, 2010). It follows that any failure to ask the VE questions on that score is not error.

to chemicals, dust, fumes, etc. R. 21, 849. Recall, in that regard, that step five required the ALJ to show only show that, in light of Young's RFC, age, education and work experience, she can make an adjustment to other work' that exists in significant numbers in the national economy.[14] *Jones v. Commissioner of Soc. Sec.*, 2011 WL 1490725 at * 1 (11th Cir. Apr. 19, 2011). The ALJ determined that she could make that adjustment and substantial evidence supports him on that score. As for whether work exists in significant numbers in the national economy, he consulted the VE on whether a significant numbers of such jobs existed. The VE said that they did. R. 850-51.

In that regard, just one occupation can be enough if significant numbers of jobs within that occupation exist. *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 positions in area where claimant resided constituted a significant number), *cited in Lee v. Sullivan*, 988 F.2d 789, 794 (11th Cir. 1993); *see also Hayes v. Commissioner of Social Sec.*, 2011 WL 2633945 at * 12 (W.D. Mich. Jun. 15, 2011) (collecting cases with 174 – 1400 job range held sufficient). Here the VE cited, *inter alia*,

---

[14]     Even where "the occupational base is eroded[, that] does not necessitate a finding of disability if there exists a significant number of jobs a claimant can perform despite his or her prolonged walking or standing limitations." *Brown v. Astrue*, 2010 WL 1257479 at * 3 (M.D. Fla. Mar. 29, 2010) (citing SSR 83-12, 1983 WL 31253 (S.S.A. 1983)).

"[s]urveillance system monitor," with "[a]pproximately 33,000 in the national economy, 500 in the local economy."   R. 851.   He also cited, and the ALJ accepted, office helper (30,000, 950 jobs) and mail clerk (35,000, 1,100 jobs).   R. 21-22; R. 850-51.   That is substantial enough evidence.

## IV.   CONCLUSION

For the reasons explained above, Christi E. Young's appeal should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this  21st  day of July, 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA